**ORAL ARGUMENT NOT YET SCHEDULED**

Nos. 15-1245, 15-1309

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

Banner Health System d/b/a Banner Estrella Medical Center
Petitioner/Cross-Respondent

v.

National Labor Relations Board
Respondent/Cross-Petitioner

_____

ON PETITION FOR REVIEW AND CROSS-APPLICATION
FOR ENFORCEMENT OF AN ORDER OF
THE NATIONAL LABOR RELATIONS BOARD

_____

**BRIEF OF PETITIONER/CROSS-RESPONDENT
BANNER HEALTH SYSTEM d/b/a
BANNER ESTRELLA MEDICAL CENTER**

Mark G. Kisicki
Elizabeth M. Townsend
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone: 602-778-3700
Facsimile: 602-778-3750
mark.kisicki@odnss.com

elizabeth.townsend@odnss.com
Attorneys for Petitioner/Cross-
Respondent
Banner Health System d/b/a
Banner Estrella Medical Center

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

(a)    **Parties and Amici.**

    1.    <u>Appearing Before the National Labor Relations Board</u>.

        a.    <u>Charging Party</u>: James Navarro

        b.    <u>Respondent</u>: Banner Health, d/b/a Banner Estrella Medical Center

        c.    <u>Government</u>: Counsel for the General Counsel of the National Labor Relations Board, Region 28

    2.    <u>Appearing Before this Court</u>.

        a.    <u>Petitioner</u>: Banner Health, d/b/a Banner Estrella Medical Center

        b.    <u>Respondent</u>: National Labor Relations Board

(b)    **Rulings Under Review.**

*Banner Health Sys.*, 362 NLRB No. 137 (June 26, 2015)

(c)    **Related Cases.**

The National Labor Relations Board filed a Cross-Application for Enforcement of an Order of the National Labor Relations Board with this Court on September 4, 2015, USCA Case 15-1309. The Court consolidated these two cases (15-1245 and 15-1309) as cross-appeals by order dated September 4, 2015.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Local Rule 26.1 of the United States Court of Appeals for the District of Columbia Circuit, Petitioner, Banner Health, d/b/a Banner Estrella Medical Center, submits the following disclosure statement:

Banner Health, incorrectly named as Banner Health System ("Banner"), is a nonprofit health care system providing comprehensive hospital and other health care services, physician services, hospice and home care in Alaska, Arizona, California, Colorado, Nebraska, Nevada and Wyoming. No parent company or any publicly-held company has a 10% or greater ownership interest in this entity. A supplemental disclosure statement will be filed upon any change in this information.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES ..................................................................................... i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ................................................................. vi

GLOSSARY ............................................................................................ x

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES .................................................................... 1

STATUTES AND REGULATIONS ...................................................... 2

STATEMENT OF THE CASE ............................................................... 2

STATEMENT OF FACTS ...................................................................... 5

I.      Background ................................................................................ 5

II.     Interview Of Complainant Form ............................................. 5

III.    Employee Confidentiality Agreement .................................... 6

SUMMARY OF ARGUMENT .............................................................. 9

STANDING ........................................................................................... 12

STANDARD OF REVIEW .................................................................. 12

ARGUMENT ........................................................................................ 13

I.  The Board's Decision That Banner Had A Policy Of Requesting
    That Employees Not Discuss Ongoing Investigations Of Certain
    Types Of Employee Misconduct Is Arbitrary, Based On Mere
    Speculation And Contrary To Law............................................................ 13

    A.  The undisputed evidence established that Odell did not ask
        the Charging Party to keep their discussion confidential................. 13

    B.  There is no evidence that Banner had "a policy of requesting
        employees not to discuss ongoing investigations of employee
        misconduct"..................................................................................... 14

II. The Board Failed To Properly Balance The Impact On Employees'
    Section 7 Rights And Banner's Substantial Justifications For
    Requesting Confidentiality In Certain Sensitive Investigations ............... 21

    A.  The Board arbitrarily assumed a confidentiality request in any
        workplace investigation automatically would impact
        Section 7 rights................................................................................ 22

    B.  The Board arbitrarily failed to recognize that, even if Odell
        had asked an employee for confidentiality in an investigation
        that implicated Section 7, her request would have had
        minimal impact on any employee's section 7 rights........................ 23

    C.  The Board arbitrarily failed to afford any weight to an
        employer's interest in requesting confidentiality in sensitive
        investigations involving claims of harassment, hostile work
        environment and patient abuse ........................................................ 28

    D.  The Board arbitrarily established an inappropriately
        broad rule not justified by the facts of the case .............................. 34

III. The Board's Finding That Banner's Confidentiality Agreement
     Violated The Act Ignored The Substantial Record Evidence, The Correct
     Legal Standard And The Precedent Of This Court ................................... 36

     A.  The Board's decision adopting the ALJ's finding is not
         supported by substantial evidence and should not be
         accorded any deference .................................................................. 36

iv

B.    The Board's decision arbitrarily failed to balance Banner's substantial business reasons for its narrowly-tailored Agreement against any inference with Section 7 rights......................................40

IV.    The Board Improperly Ordered A Multi-Facility Posting..........................42

CONCLUSION ......................................................................................................44

CERTIFICATE OF COMPLIANCE....................................................................45

STATUTORY ADDENDUM ..............................................................................46

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
    522 U.S. 359 (1998)..................................................................12

*Ang Newspapers*,
    343 NLRB 564 (2004) ...............................................................40

*Banner Health Sys.*,
    358 NLRB No. 93 (July 30, 2012) .................................................4

*Banner Health Sys.*,*
    362 NLRB No. 137 (June 26, 2015).........................................*passim*

*Belle of Sioux City, L.P.*,*
    333 NLRB 98 (2001) ...........................................................28, 31

*Boyle's Famous Corned Beef Co. v. NLRB*,
    400 F.2d 154 (8th Cir. 1968) ......................................................12

*Caesar's Palace, Inc.*,*
    336 NLRB 271 (2001) .....................................................25, 28, 35

*Cmty. Hosp. of Cent. Cal. v. NLRB*,*
    335 F.3d 1079 (D.C. Cir. 2003).......................................11, 37, 40, 42

*Detroit Free Press v. Ashcroft*,
    303 F.3d 681 (6th Cir. 2002) ......................................................31

*Earthgrains Co.*,
    351 NLRB 733 (2007) ...............................................................43

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)..................................................................29

*Franklin Iron & Metal Corp.*,
    315 NLRB 819 (1994) ...............................................................24

*Fresh & Easy Neighborhood Mkt.*,
    361 NLRB No. 12 (Aug. 11, 2014) ...........................................23, 35

*Holo-Crome Co. v. NLRB,*\*
   954 F.2d 108 (2d Cir. 1992) ...............................................................17

*Hyundai Am. Shipping Agency,*
   357 NLRB No. 80 .................................................................................24

*Hyundai Am. Shipping Agency v. NLRB,*\*
   805 F.3d 309 (D.C. Cir. 2015) .....................................................30, 34

*IBM Corp.,*\*
   341 NLRB 1288 (2004) .........................................................30, 32, 35

*Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-
   CIO, Local No. 11 v. NLRB,*
   792 F.2d 241 (D.C. Cir. 1986) ...........................................................18

*J.J. Newberry Co. v. NLRB,*\*
   645 F.2d 148 (2d Cir. 1981) ...............................................................18

*Kuhn v. Civil Aeronautics Bd.,*
   183 F.2d 839 (D.C. Cir. 1950) ...........................................................20

*Labinal, Inc.,*\*
   340 NLRB 203 (2003) ...........................................................37, 38, 39

*Lutheran Heritage Village-Livonia,*\*
   343 NLRB 646 (2004) ...............................................27, 37, 38, 39

*Mobil Oil Exploration & Producing,*
   325 NLRB 176 (1997) .........................................................................25

*NLRB v. Atlanta Coca-Cola Bottling Co.,*
   293 F.2d 300 (5th Cir. 1961) ..............................................................18

*NLRB v. Blake Constr. Co.,*\*
   663 F.2d 272 (D.C. Cir. 1981) ...........................................................18

*NLRB v. Great Dane Trailers, Inc.,*
   388 U.S. 26 (1967) ..............................................................................21

*NLRB v. Homemaker Shops, Inc.,*\*
   724 F.2d 535 (6th Cir. 1984) ..............................................................20

*NLRB v. Louis A. Weiss Mem'l Hosp.*,*
172 F.3d 432 (7th Cir. 1999) .................................................................17, 22, 28

*NLRB v. Noel Canning*,
134 S. Ct. 2550 (2014) .........................................................................................4

*Payton v. City of Santa Clara*,
132 Cal. App. 3d 152, 183 Cal. Rptr. 17 (Cal. App. 1982)................................41

*Phoenix Transit Sys.*,
337 NLRB 510 (2002) .......................................................................................25

*Pirlott v. NLRB*,
522 F.3d 423 (D.C. Cir. 2008)...........................................................................39

*S. Steamship Co. v. NLRB*,*
316 U.S. 31 (1942)..............................................................................................33

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002)...........................................................................12

*SNE Enters.*,
347 NLRB 472 (2006) .......................................................................................25

*Sutter E. Bay Hosps. v. NLRB*,
687 F.3d 424 (D.C. Cir. 2012)......................................................................12, 36

*Titanium Metals Corp. v. NLRB*,
392 F.3d 439 (D.C. Cir. 2004)...........................................................................12

*Torrington Extend-A-Care Employees Ass'n v. NLRB*,*
17 F.3d 580 (2d Cir. 1994) ................................................................................42

*Westside Cmty. Mental Health Ctr.*,
327 NLRB 661 (1999) .......................................................................................24

## Statutes

29 U.S.C. § 160(a) ...............................................................................................1

29 U.S.C. § 160(b) ...............................................................................................1

29 U.S.C. § 160(f)................................................................................................1

42 U.S.C. § 2000e-3 ...............................................................................41

A.R.S. §§ 13-3620, 46-454 ..................................................................30

A.R.S. § 36-509 .....................................................................................41

A.R.S. § 36-3805 ...................................................................................41

A.R.S. §§ 44-1373 through 1373.03 .....................................................41

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*..................29, 30

Health Insurance Portability and Accountability Act of 1996, Pub. L.
No. 104-191 (1996).........................................................................41

**Other Authorities**

EEOC, *Enforcement Guidance on Vicarious Employer Liability for
Unlawful Harassment by Supervisors*, *available at*
*http://www.eeoc.gov/policy/*..............................................................29

*Report of the General Counsel Concerning Employer Rules*, GC 15-
04....................................................................................................27, 39

\*  Authorities upon which we chiefly rely are marked with asterisks.

# <u>GLOSSARY</u>

| | |
|---|---|
| "Agreement" | Banner's Confidentiality Agreement |
| "ALJ" | Administrative Law Judge |
| "ALJ Dec." | Administrative Law Judge Jay Pollack's October 31, 2011 Decision, reported at 2011 WL 5149073 |
| "Banner" or "Petitioner" | Petitioner Banner Health d/b/a Banner Estrella Medical Center |
| "CGC" | Counsel for the General Counsel of the National Labor Relations Board, Region 28 |
| "CGC Post-Hrg. Br." | The CGC's Post-Hearing Brief filed with the ALJ following the Unfair Labor Practice hearing in *Banner Health Sys.*, held on Aug. 30-31, 2011 |
| "CGC Ex." | Exhibits introduced by the CGC at the Unfair Labor Practice hearing |
| "CGC Cross-Excep. Br." | The CGC's Cross-Exceptions Brief filed with the Board |
| "Dec." | The Board's Decision and Order in *Banner Health Sys.*, reported at 362 NLRB No. 137 (June 26, 2015) |
| "Dis." | Member Miscimarra's dissenting opinion to the Board's June 26, 2015 Decision and Order |
| "EEOC" | Equal Employment Opportunity Commission |
| "HR" | Human Resources |
| "Interview Form" | Banner's Interview of Complainant Form |

x

| | |
|---|---|
| "NLRA" or "the Act" | National Labor Relations Act |
| "NLRB" or "the Board" | National Labor Relations Board |
| "Pet. Ans. Br." | Banner's Answering Brief to the CGC's Cross-Exceptions Brief filed with the Board |
| "Tr." | The Unfair Labor Practice Hearing transcript |
| "ULP" | Unfair Labor Practice |

## JURISDICTIONAL STATEMENT

Banner Health d/b/a Banner Estrella Medical Center (incorrectly named as Banner Health System) ("Banner") appeals from the National Labor Relations Board's ("NLRB" or "Board") June 26, 2015 Decision and Order, 362 NLRB No. 137 ("Dec.").[1] The Board had jurisdiction under Section 10(a) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. § 160(a), over the underlying unfair labor practice ("ULP") proceedings alleging Banner violated employees' Section 7 rights. This Court has jurisdiction under 29 U.S.C. § 160(f) to review the Board's Decision as a final order under the Act.

## STATEMENT OF ISSUES

1. Whether the Board acted arbitrarily in finding, contrary to the Administrative Law Judge's ("ALJ") decision, that Banner violated the Act by maintaining and applying a policy of requesting employees not to discuss ongoing investigations of certain types of employee misconduct where the Counsel for the General Counsel ("CGC") failed to introduce any evidence that Banner made such a request in an investigation that implicated Section 7 rights and in the Act's six-months limitations period. 29 U.S.C. § 160(b).

2. Whether the Board acted arbitrarily in establishing a rule that broadly prohibits employers from requesting that employees keep investigatory interviews confidential and improperly shifted to employers its obligation of balancing the

---

[1] Record citations in this proof brief are to the original record; the deferred appendix will be filed on March 8, 2016. "Dec." refers to the Board's June 26, 2015 Decision and Order. "Tr." refers to the transcript of the ULP hearing. "CGC Ex." refers to exhibits introduced by the CGC at the hearing. "CGC Post-Hrg. Br." refers to the CGC's Post-Hearing Brief filed with the ALJ. "CGC Cross-Excep. Br." refers to the CGC's Cross-Exceptions Brief filed with the Board. "Pet. Ans. Br." refers to Banner's Answering Brief to the CGC's Cross-Exceptions Brief.

employer's legitimate interests for making such a request against the impact it might have on employee Section 7 rights.

3. Whether the Board acted arbitrarily in adopting, without discussion, the ALJ's finding that Banner's Employee Confidentiality Agreement ("Agreement") violated the Act where: (a) this Court's precedent establishes that no reasonable employee would interpret the provision as restricting Section 7 rights because of its context; and (b) the ALJ based his finding on a conclusion, unsupported by any record evidence, that the Agreement restricted employees from disclosing another employee's confidential personnel information without that other employee's permission.

4. Whether the Board failed to follow its own precedent in expanding the remedial posting notice beyond Banner Estrella to other facilities owned by Banner Health.

## STATUTES AND REGULATIONS

Relevant statutes are provided in the attached Statutory Addendum.

## STATEMENT OF THE CASE

On June 30, 2011, Region 28 of the Board issued a Complaint alleging Banner gave the Charging Party, employee James Navarro, a coaching, negative yearly evaluation and revised yearly evaluation because he had allegedly engaged in protected concerted activity and to discourage other employees from engaging in such conduct. [CGC Ex. 1(c).] Despite the absence of any supporting evidence, Counsel for the General Counsel ("CGC") proceeded to hearing. When the CGC rested its case-in-chief, Banner moved to dismiss the Complaint. [Tr. 176:9-177:13.] The ALJ responded to Banner's motion by stating that he agreed with "most of" Banner's arguments and the CGC had "a very weak case," but he was "not prepared to dismiss it at [that] stage." [Tr. 177:14-18.]

When the hearing resumed the following morning, the CGC orally moved to re-open its case and amend the Complaint to include two new 8(a)(1) allegations unrelated to those in the underlying charge, those that the Region had investigated, or those in the initial Complaint. Rather, the amendment was based on two documents that Banner had produced at the start of the hearing: a Confidentiality Agreement in Navarro's personnel file and an "Interview of Complainant" Form ("Interview Form") on which HR Consultant Joanne Odell had taken notes during a discussion with Navarro. [Tr. 234:9-15, 242:9-25; CGC Ex. 12.] In full, the amendments alleged that:

> (e) Within the last six months and continuing to date Respondent has maintained an overly-broad and discriminatory rule in its Employee Confidentiality Agreement, prohibiting its employees from discussing their terms and conditions of employment, including wages and disciplinary actions with other employees.

> (f) Within the last six months and continuing to date Respondent [Banner] has maintained an overly-broad and discriminatory rule in its Interview of Complainant form, prohibiting its employees from discussing their terms and conditions of employment with other employees, including the investigatory interviews.

Over Banner's objection, the ALJ allowed the CGC's oral motion to amend. [Tr. 183:2-185:15; CGC Ex. 13.]

Ultimately, the ALJ dismissed all of the allegations in the initial Complaint. [ALJ Dec. at 4.] Additionally, the ALJ found that the Interview Form did not violate the Act because it was not given to employees and the confidentiality prompt merely asked but did not mandate that employees refrain from discussing investigatory interviews, it lasted only while the investigation was ongoing, and it was justified by Banner's legitimate interest of protecting investigation integrity (equating that interest to the Board's own rationale for sequestering witnesses during hearings). [*Id.* At 3]. However, the ALJ found the Confidentiality

3

Agreement violated the Act by "requir[ing] an employee to get permission from another employee to discuss the latter's wages and discipline." [*Id.* at 5.]

Banner and the CGC both filed exceptions to the ALJ's decision. On July 30, 2012, the Board issued its first decision in this case. Over Member Hayes's dissent, a two-member majority overturned the ALJ's conclusion that Banner's use of the Interview Form did not violate the Act. 358 NLRB No. 93, at *2 (2012). In all other respects, the Board unanimously affirmed the ALJ's findings and conclusions. *Id.* at **1-2.

Banner petitioned this Court for review of the Board's decision and the CGC cross-petitioned for enforcement. [Case Nos. 12-1359, 12-1377.] In the middle of the parties' briefing schedule, the Supreme Court issued its decision in *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014) (President exceeded his constitutional authority in making recess appointments of two Board members when the Senate was not recessed). Because the two-member Board majority that decided the case included one whose appointment was not valid under *Noel Canning*, the CGC moved to vacate the Board's decision and remand it. This Court granted that motion on August 1, 2014.

On June 26, 2015, the Board issued a new decision ("Dec."). Consistent with its initial decision, the Board unanimously held that none of Banner's actions regarding Navarro violated the Act. [Dec. at 1-2.] Also consistent with its initial decision, the Board adopted the ALJ's finding that the Confidentiality Agreement violated the Act but, contrary to the ALJ's order that limited the remedial posting requirement to Banner Estrella Medical Center, ordered Banner to post a remedial posting at all facilities using the Agreement. [Dec. at 1 n.3.] Regarding the Interview Form, a two-member majority found that Banner had violated the Act by "maintaining and applying a policy of requesting employees not to discuss ongoing investigations of employee misconduct" in "*any* investigation into alleged sexual

4

harassment, hostile work environment claim, charge of abuse, or similar alleged misconduct." [Dec. at 4 (emphasis added).]

In a lengthy opinion, Member Miscimarra dissented from the Board's decision regarding Banner's use of the Interview Form and the Board's newly-articulated rule limiting employers' ability to request confidentiality of employees during investigations. Member Miscimarra's dissent argued the Board's newly-articulated rule was inconsistent with law, contrary to public policy, and unsupported by the facts of the case before the Board. [Dis. At 7-21.]

## STATEMENT OF FACTS

### I.    Background

In February 2011, one of Banner's employees, James Navarro, went to HR Consultant Joanne Odell's office to complain that his supervisor was upset with him after he refused to comply with a directive that he thought was inconsistent with established procedures. [Tr. 234:9-242:8.]

### II.    Interview Of Complainant Form

During Odell's discussion with Navarro, she took notes on a document titled "Interview of Complainant Form" ("Interview Form"). [Tr. 234:9-15, 242:9-25; CGC Ex. 12.] The record provides little evidence explaining the Interview Form, which is a document containing a series of prepared statements and questions, as well as a space for notes. [CGC Ex. 12.] Odell used the Interview Form to take notes and could use its prepared, bullet-point statements and questions as prompts as she deemed appropriate given the circumstances of a particular discussion or interview. [Tr. at 193:1-6, 193:22-194:3, 194:16-21.] Odell's uncontradicted testimony established that she never gave or showed the Interview Form to anyone and that, although she used it to take notes during her discussion with Navarro, she did not use the form's bullet-point prompt requesting confidentiality in that

discussion. [Tr. at 186:10-14, 192:10-193:6, 193:22-194:3, 194:16-21, 234:9-15.] Although the CGC recalled Navarro to testify after Odell's testimony, the CGC never asked Navarro if – contrary to her testimony – Odell had given or showed him the Interview Form or requested that he keep their discussion confidential. [*See* Tr. 329-31.]

In explaining why she did not use the confidentiality prompt with Navarro, Odell testified that she had used it in, "maybe, half a dozen" "other cases" and that she "might" use it "just in the more sensitive situations," such as those involving harassment and suspicions of abuse. [Tr. at 186:10-18, 194:2-10; 259:24-260:14.] *The CGC never followed up on that testimony to establish that Odell or anyone else at Banner had utilized the Interview Form's prompts in a manner that implicated a single employee's Section 7 rights at any time – much less within the statutory 10(b) period.*

Odell testified, without contradiction, that her requests for confidentiality do not limit employees' ability to discuss complaints with co-workers. [Tr. at 259:9-23.] Rather, her requests are limited to what is said in the interview discussion itself to "keep the investigation as pure as possible" and apply only "while the investigation is going on." [Tr. at 193:15-21, 259:9-23; CGC Ex. 12.] Furthermore, the confidentiality prompt merely *requests* employees keep the details of their investigatory interview confidential. [CGC Ex. 12.] As Odell testified, she does not demand confidentiality, nor threaten or impose discipline if the employee chooses not to follow the request. [Tr. at 196:11-14, 256:3-12; CGC Ex. 12.]

## III.     Employee Confidentiality Agreement

Banner Estrella Medical Center is a Banner Health hospital in Arizona, with the mission "to make a difference in people's lives through excellent patient care." [CGC Ex. 3.] Because of the nature of Banner's business as a hospital, its

employees learn and have access to confidential patient information in performing their jobs. [Tr. at 256:13-258:5.] In performing their jobs, some employees do, and all employees might, have access to Banner's confidential business information and confidential personnel information regarding other employees. To protect the privacy of such information, its own confidential information and that of other employees obtained while performing their jobs, Banner Estrella requires all employees to sign a Confidentiality Agreement. [Tr. at 256:13-25.]

The full text of the Agreement following the title is quoted, below:

I understand that I may hear, see and create information that is private and confidential. Examples of confidential information are:

- Patient information both medical and financial.

- Private employee information (such as salaries, disciplinary action, etc.) that is not shared by the employee.

- Business information that belongs to Banner or those with whom we work including:

  o Copyrighted computer programs

  o Business and strategic plans

  o Contract terms, financial cost data and other internal documents.

Keeping this kind of information private and confidential is **so important** that if I fail to do so, I understand that I could be subject to corrective action, including termination and possibly legal action.

**I promise:**

1. I will use confidential information only as needed to do my job.  I will not access patient or employee information that is not needed to do my

job. I will release patient information in accordance with the Data Classification and Release of Information policy.

2. I will not share confidential information in a careless manner and will protect any access codes, computer passwords or other such things so that unauthorized persons cannot access confidential information.

3. I understand that information in my computer or electronic files may not be protected from legal discovery, even after I have deleted it from my files.

4. I will report to management if I think private or confidential information is being accessed or shared improperly. I understand that any such reports and my name will be kept confidential to the extent possible.

5. I understand that any confidential or proprietary information I develop or work on as part of my job belongs to Banner, not me. Any processes, products, writings or other creations developed by a BH employee, while employed by BH that are within the scope of BH' business operations will be the property of BH.

6. I understand that these promises carry over even if my employment from Banner should end.

By clicking the I Agree button below, I acknowledge and agree to comply with the terms and conditions described in the Confidentiality Agreement and in this Acknowledgement Form.

_____
Signature

[CGC Ex. 14.]

# SUMMARY OF ARGUMENT

The Board's decision in this case seriously undermines employers' legitimate rights and legal obligations to conduct effective workplace investigations. Ultimately, the Board decision is based on finding that Banner had a "policy" amounting to a "categorical approach" in "any" investigation into certain types of employee misconduct to keep the investigation confidential while it was ongoing. The Board purported to divine its finding from the Interview Form and Odell's limited testimony explaining her discussion with the Charging Party, Navarro. The Board then arbitrarily assumed that such a "categorical approach" interfered with some hypothetical employee's Section 7 rights. The Board's finding suffers from two fatal flaws.

First, the Board's central factual finding is utterly unsupported by the record, much less the substantial evidence the law requires. After the ALJ allowed the CGC to re-open its case and amend the Complaint on the final hearing day, the CGC alleged merely that Banner maintained a "rule" in its Interview Form that prohibited employees from discussing interview discussions. Accordingly, the CGC's questions were focused on discovering whether Odell gave the Interview Form the interviewees, provided a copy to complainants or at least showed it to managers. Odell explained that she never showed the form to anyone, had requested confidentiality in only "half a dozen, maybe" of her investigations and did not ask it of Navarro (Navarro never contradicted Odell, despite being recalled by the CGC). Odell later explained she did not make a confidentiality request to Navarro because she requested confidentiality only in "more sensitive" investigations, which "might" or "may" involve allegations of harassment or suspicions of abuse, and the CGC did not ask a *single* question about those other investigations to determine whether Odell asked an employee to keep their

discussion confidential within the 10(b) period and in an investigation that implicated Section 7 rights.

In sum, there is not a scintilla of evidence that Banner had any "rule," "policy" or "categorical approach" of requesting confidentiality in investigations, as the dissent recognized. [Dis. at 10, n. 18 ("the majority's description of [Banner's] alleged 'categorical approach' amounts to 'mere speculation without a jot of evidentiary support in the record'") quoting *Jackson Hospital Corp. v. NLRB*, 647 F.3d 1137, 1142 (D.C. Cir. 2011).] Moreover, there is no basis for finding a violation with respect to an actual investigation as it is undisputed that Odell did not make a confidentiality request in the only conversation addressed in the substantive record (Navarro's). Presumably due to that evidentiary gap, the Board did *not* find Odell had requested confidentiality of Navarro. Instead, it took an entirely different tack and created from whole cloth its finding that Banner had a "policy" of requesting confidentiality in violation of the Act.

Second, but not surprisingly due to the total lack of evidence supporting the Board's finding, it bears no relationship to the violations alleged in the Amended Complaint as the CGC and Banner interpreted them. Indeed, the CGC essentially abandoned an already circumspect inquiry about the Interview Form after learning Odell did not give or show it to Navarro or anyone else. Moreover, the CGC's only argument to the Board was that Odell made a confidentiality request to Navarro (taking advantage of a typographical error in the transcript), not that Banner had some "rule," "policy" or "categorical approach" of requesting confidentiality in "all" investigations of particular categories of allegations without a business justification. Faulting Banner, as the Board did, for failing to anticipate and defend against a case the CGC did not pursue at the hearing or in argument before the Board contravenes all notions of fundamental fairness.

Beyond its finding that Banner violated the Act by the alleged "policy" of requesting confidentiality in workplace investigations, the Board also found Banner's Confidentiality Agreement violated the Act. That Agreement prohibits employees from disclosing confidential information; it then provides as examples of confidential information, including patient information, certain company information and "[p]rivate employee information (such as salaries, disciplinary action, etc.) that is not shared by the employee." The Board's finding of a violation based on the Agreement also is fatally flawed for three reasons.

First, a reasonable read of the entire Agreement makes obvious that it limits only private personnel information learned through an employee's job duties. As this Court has recognized, a rule prohibiting employees from disclosing "confidential information concerning patients or employees" does not violate that Act because employees would understand that "confidential" means information obtained in confidence. *Cmty. Hosp. of Cent. Cal. v. NLRB*, 335 F.3d 1079, 1089 (D.C. Cir. 2003). Second, there is no evidence that any employee's Section 7 rights were – or would reasonably be – "chilled" by the Confidentiality Agreement, leading to rank speculation by the Board that it violated the Act. Third, the Board again failed to meet its legal obligation to harmonize the Act with other statutory schemes (including those holding employers liable for improper disclosure of personal employee information) and balance competing employer interests in avoiding such liability and protecting their employees' privacy rights.

Ultimately, this decision is a symptom of the Board's increasingly myopic focus on Section 7 rights without regard for the entire landscape of other important rights of both employers and employees. Some of those rights that this decision and other recent Board decisions simply disregard are important rights Congress has given employees under other statutory schemes. Those other schemes mandate confidentiality in sensitive investigations so witnesses feel comfortable bringing

allegations forward and retaliation concerns are minimized. The Board is required to balance such employer interests and harmonize all congressional schemes. In this case, the Board simply ignored them.

This Court should reverse the Board's decision because it is arbitrary, based on mere speculation rather than substantial evidence, and violates Banner's fundamental due process rights.

## STANDING

The administrative record establishes Banner's standing as the object of the Board's action. *See Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002).

## STANDARD OF REVIEW

The Court generally defers to the Board unless its decision is unsupported by substantial evidence, lacks a reasonable basis in law or does not apply proper legal standards. *Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 445-46 (D.C. Cir. 2004); *Sutter E. Bay Hosps. v. NLRB*, 687 F.3d 424, 438 (D.C. Cir. 2012) (vacating decision in part and expressing great concern with how the Board assessed the evidence). In all cases, the CGC bears the burden of proving a violation of law with substantial evidence; "mere speculation and conjecture cannot be accepted as substantial evidence." *Boyle's Famous Corned Beef Co. v. NLRB*, 400 F.2d 154, 165 (8th Cir. 1968) (internal quotation marks and citation omitted). Moreover, the Board "is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all inferences that the evidence fairly demands." *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 378 (1998).

## **ARGUMENT**

**I.    The Board's Decision That Banner Had A Policy Of Requesting That Employees Not Discuss Ongoing Investigations Of Certain Types Of Employee Misconduct Is Arbitrary, Based On Mere Speculation And Contrary To Law.**

The Board majority found that, "by maintaining and applying a policy of requesting employees not to discuss ongoing investigations of certain types of employee misconduct, [Banner] violated Section 8(a)(1) of the Act." [Dec. at 4.] The Board did not find that Banner broadly disseminated that purported policy to employees; rather, it based its finding entirely on the testimony of one HR Consultant, Odell, regarding how she used the Interview Form and why she did *not* use its confidentiality prompt during her conversation with the Charging Party, Navarro. Odell's testimony, however, clearly demonstrates that the Board's finding is based on pure speculation, which is not an adequate basis to find that an employer has violated the law. Speculation certainly cannot fill the evidentiary gaps created by the CGC's failure to meet its initial burden of proving a *prima facie* violation of the Act.

### **A.    The undisputed evidence established that Odell did not ask the Charging Party to keep their discussion confidential.**

On direct examination by the CGC after re-opening its case-in-chief, Odell testified that she did not use the Interview Form's confidentiality prompt in her discussion with Navarro.[2] [Tr. at 194:2-6.] The CGC never asked Navarro – either

---

[2] Due to an obvious transcription error, the transcript indicates that Odell later responded positively to a question by Banner's counsel asking Odell to recall her earlier testimony that she "did read" the prompt to Navarro. [Tr. at 194:2-6, 195:25-196:6.] Of course, as Odell's earlier testimony makes clear, Banner's counsel actually asked her to recall her earlier testimony that she "had not read" the confidentiality prompt to Navarro. [Tr. at 194:2-6.] Indeed, nothing in Odell's earlier testimony remotely suggests that she had earlier testified that she read the prompt to Navarro and, in fact, she testified she had not read that prompt to

in its case-in-chief or when recalled to testify after Odell – whether Odell had made that request, or even to confirm or deny her testimony that she had not done so. The CGC's evidence clearly established that Odell had ***not*** asked Navarro to keep their discussion confidential and, notably, the Board's decision (unlike its first decision) avoided any express finding that she did.

### B. <u>There is no evidence that Banner had "a policy of requesting employees not to discuss ongoing investigations of employee misconduct".</u>

Navarro was the only Charging Party in the case and his conversation with Odell was the only specific discussion about which the CGC presented evidence at the hearing. Rather than base its decision on Odell's discussion with Navarro, however, the Board concluded that Banner had a "policy" of "categorical[ly]" requesting confidentiality in "any" investigations involving certain types of employee misconduct. [Dec. at 4.]

To establish that Banner violated the Act by maintaining a policy that restricted employees' Section 7 rights, it was the CGC's initial burden to prove what that purported policy was. Only by establishing the terms of the purported policy is it possible for the CGC to meet its additional burden of proving how such a policy restricted Section 7 rights. Here, the purported policy was not stated in a document that Banner disseminated to employees. Accordingly, the CGC had to prove its existence, terms and how it violated the Act without a handbook provision or other document detailing terms that, for example, expressly violated

---

Navarro in response to the CGC's questioning in its case-in-chief. [Tr. at 193:25-194:6.] There was no ambiguity on that point, as demonstrated by Odell's subsequent testimony, the fact that the CGC's post-hearing brief to the ALJ did *not* claim that Odell had asked Navarro to keep their discussion confidential, and the CGC not asking Navarro whether Odell had requested confidentiality when it recalled him for its rebuttal case at the end of the hearing. [*See* Tr. 329-31.]

the Act. Rather, whether the alleged policy expressly restricted Section 7 rights would have been entirely dependent on what Odell verbally communicated to particular employees. The CGC, however, limited its evidence to Odell's testimony about when she "might" request confidentiality, the fact that she "might have" made such a request in half a dozen "other cases," and the fact that, on one occasion a few weeks before the hearing, she had made that request. The CGC never asked a *single* question to determine what Odell actually said, when and to whom. Those statements fail to provide an evidentiary basis for the Board's decision because:

1.  Odell's testimony establishes only that she asked one employee to keep an interview confidential within the Act's 10(b) period.

2.  *Even as to that one instance when Odell requested confidentiality*, the CGC did not establish that this one investigation implicated Section 7; for example, by presenting evidence that Odell had requested confidentiality of an employee she was investigating for alleged misconduct and possible discipline.

    •   As Member Miscimarra's dissent explained, many workplace investigations do not implicate Section 7 concerns, so the Board cannot legitimately assume that they do. [Dis. at 14-16.]

3.  There is no evidence that Odell had a practice or policy of requesting confidentiality in "any" investigation involving certain types of employee misconduct.

    •   Although Odell explained she "might" request confidentiality in "more sensitive" situations, of which sexual harassment and abuse are common examples, the CGC did not ask her questions to identify *any* particular investigation in which she actually requested confidentiality, much less, that she had a

15

practice of doing so within the 10(b) period or that *any* investigation involved *any* type of *employee* misconduct.

- Nor did the CGC ask any questions of Odell to demonstrate that the half dozen times she "might have" requested confidentiality were a significant percentage of the total number of investigations she conducted (which might support an argument, but hardly meet the CGC's burden of proof, that Banner had a policy or practice of categorically requesting confidentiality).

- Nor did the CGC ask any questions of Odell to establish that she requested confidentiality in all investigations into particular types of misconduct.

  o Indeed, the CGC argued that the evidence did not permit the very finding the Board later made: in its brief to the ALJ, the CGC asserted that "[t]here is no indication in the record that Respondent limits this prohibition based upon the type of investigation in question, but only that Odell sometimes gives employees this prohibition, and sometimes does not." [CGC Post-Hrg. Br. at 26-27.]

  o Even in investigations of harassment and patient abuse, there is no basis to assume that an employee who was asked to keep an interview confidential was subject to discipline or had their terms and conditions of employment implicated in any way by the investigation.

4. The lack of evidence regarding Odell's personal practice of requesting confidentiality similarly precludes any inference that Banner overall had a "policy" regarding requests for confidentiality during on-going

16

investigations. The CGC never asked Odell whether the occasions when she "might" request confidentiality were pursuant to any Banner policy, whether Banner gave her any training regarding such requests, or what expectations Banner had communicated to her, if any, about requesting confidentiality of employees during investigations – let alone in investigations that implicated Section 7 rights.

The majority's conclusion that Banner had a policy of categorically requesting confidentiality in "any" investigation involving certain types of employee misconduct is not supported with any, much less substantial, evidence. It is based on pure speculation that improperly excused the CGC's failure to meet its evidentiary burden. *See NLRB v. Louis A. Weiss Mem'l Hosp.*, 172 F.3d 432, 445-46 (7th Cir. 1999) (CGC failed to meet its burden of proof regarding how a layoff occurred and, thus, conclusion that employer circumvented established layoff process was "pure speculation"); *cf. Holo-Crome Co. v. NLRB*, 954 F.2d 108, 113 (2d Cir. 1992) ("Obviously, the General Counsel's '*prima facie* case' cannot consist of evidence that the General Counsel has failed to elicit").

The Board cannot use speculation to fill the evidentiary gaps created by the CGC's failure to establish facts showing an Act violation:

> If counsel for the General Counsel wanted to create a record from which this inference could be drawn, she needed to elicit some testimony on the matter. . . . But it is perfectly clear from the ALJ's opinion that she considered the gaps in the record to support General Counsel's burden of proof. That can't be. An absence of evidence does not cut in favor of the one who bears the burden of proof on an issue. . . . The failure of the General Counsel to create a factual record in no way supports a finding that General Counsel met its burden of proof.

*Louis A. Weiss Mem'l Hosp.*, 172 F.3d at 445-46 (internal citation omitted).

To the extent the CGC might argue the Board's decision can be based on inferences drawn from the record, such inferences would be unreasonable and do not constitute the "substantial evidence" necessary to support the Board's decision that Banner had a policy of requesting confidentiality during workplace investigations in violation of the Act. *J.J. Newberry Co. v. NLRB*, 645 F.2d 148, 152 (2d Cir. 1981) (when CGC failed to elicit testimony from employee witnesses regarding whether they knew they were not receiving a planned raise, NRLB's conclusion that employees knew their raise was being withheld and that constituted interference with protected activities was unsupported by substantial evidence); *NLRB v. Atlanta Coca-Cola Bottling Co.*, 293 F.2d 300, 303-04 (5th Cir. 1961) (reversing blanket discriminatory discharge finding as unsupported by substantial evidence as there was no evidence produced on half of the 47 allegedly-illegal discharges).

In this case, the Board found Banner guilty of violating the law based on facts and a theory of liability it divined years after the hearing, raising serious due process concerns. *See NLRB v. Blake Constr. Co.*, 663 F.2d 272, 279 (D.C. Cir. 1981) ("The Board may not make findings or order remedies on violations not charged in the General Counsel's complaint *or* litigated in the subsequent hearing") (emphasis added)); *accord Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO, Local No. 11 v. NLRB*, 792 F.2d 241, 245 (D.C. Cir. 1986) (finding "indirect coercion" theory on which Board based Section 8(a)(2) liability was not litigated as part of the Section 8(a)(2) allegation).

Although the Amended Complaint generally alleged that Banner maintained an overly broad rule "in its Interview of Complainant form" prohibiting employees from discussing investigatory interviews, the CGC's initial questioning on that issue made clear the allegation was based on, and the CGC was proceeding under, the assumption that Banner "maintained" its purportedly over-broad rule by

18

showing the Interview Form to employees – not by how Odell might have exercised discretion in using the confidentiality prompt in particular investigations. Nor did the CGC's questioning suggest that it might argue that Odell had a personal policy (apparently adopted without any direction from superiors) of requesting confidentiality in all investigations into certain types of employee misconduct. Indeed, in its post hearing brief, the CGC argued exactly the opposite of what the Board later found Banner's policy to be: the CGC argued to the ALJ that Odell did *not* base her requests for confidentiality on the type of case she was investigating. [CGC Post-Hrg. Br. At 26-27.]

Banner lacks the ability to divine facts where none exist and cannot be expected to defend against claims or theories the CGC did not pursue with supporting evidence at the hearing. Banner reasonably limited its case to introducing evidence necessary to meet the CGC's case-in-chief. Banner went further: although the CGC never established that Odell ever requested confidentiality in an investigation that implicated employee Section 7 rights, Banner nonetheless demonstrated that any limited requests for confidentiality by Odell fell well within the parameters the Board had established at that time and even went to great lengths to not infringe on Section 7 rights. [Tr. at 196:11-14, 256:3-12, 258:14-260:15.] In particular, Banner established that any request for confidentiality: (1) was limited to the time the investigation was ongoing; (2) was limited to Odell's discussion with the employee and not the subject of the investigation; (3) was not coercive because it was merely requested but did not demand confidentiality and was not accompanied by any actual or implied threat of discipline; and (4) was not routinely given but, rather, Odell requested confidentiality only in investigations she believed were "sensitive."

Remarkably, the Board's decision faults Banner for failing to prove that any confidentiality requests were justified. In doing so, the Board demonstrates a

complete disregard of Banner's due process rights. Apart from the CGC's failure to demonstrate that Banner ever requested confidentiality in an actual investigation that implicated Section 7 rights, nothing in the CGC's case-in-chief possibly suggested that Banner should prove an affirmative defense (e.g., justification) for a rule it did not have and that the CGC did not claim or attempt to prove it had; namely, a rule that categorically required confidentiality in any investigatory interview involving misconduct. Indeed, the CGC essentially abandoned any inquiry about the Interview Form after learning that Odell did not give or show it to the complainant, other employees or managers [Tr. 193:1-24, 195:16-21], and did not use its confidentiality prompt in her discussion with Navarro. Accordingly, Banner's ability to "understand exactly what the issues" were that it needed to defend against was reasonably based on the CGC's limited questions in its case-in-chief. *Kuhn v. Civil Aeronautics Bd.,* 183 F.2d 839, 842 (D.C. Cir. 1950).

Given the lack of any charge or Board investigation regarding the Interview Form, the Amended Complaint's language and the CGC's limited questioning (which focused on whether Odell gave the form to anyone), Banner cannot reasonably be expected to assume the Board would pursue a new tack years later and issue a decision based on findings that the CGC did not litigate or argue to the Board. Indeed, the CGC's brief to the Board claimed that the Interview Form violated the Act *only* because the CGC claimed (erroneously) that Odell asked Navarro to keep their discussion confidential. [CGC Cross-Excep. Br. at 33-35.] Consequently, the Board's decision to find Banner violated the Act on a basis that was never litigated violates all notions of fundamental fairness and Banner's due process rights. It cannot stand. *Cf. NLRB v. Homemaker Shops, Inc.*, 724 F.2d 535, 544 (6th Cir. 1984) (unclear hearing record on alleged employer-dominated committee highlighted insufficiency of full and fair litigation and precluded Board decision on a theory the CGC did not litigate at the hearing).

20

## II.   The Board Failed To Properly Balance The Impact On Employees' Section 7 Rights And Banner's Substantial Justifications For Requesting Confidentiality In Certain Sensitive Investigations.

An employer rule that infringes on Section 7 rights does not necessarily violate the Act if there is a legitimate business reason for it. When an employer provides such a reason, it is the Board's "duty to strike the *proper balance* between" employees' Section 7 rights and competing legitimate business interests. *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 33-34 (1967) (emphasis added). In this case, the Board majority failed to engage in any balancing at all. [Dis. at 13-14.]

Of course, the record in this case on which the Board could balance the competing interests is limited. But that is because the CGC introduced no evidence showing Banner had any rule that required confidentiality during investigations. It was the CGC's burden to initially prove that Banner had a rule requiring confidentiality during investigations in a manner that infringed on Section 7 rights. Yet, contrary to the Board's unfounded assumption, Section 7 rights are not implicated in all workplace investigations, and even investigations into certain types of employee misconduct do not necessarily implicate the Section 7 rights of all employees who are interviewed. Only after the CGC proves "that the employer's conduct adversely affects employees' protected rights" by a confidentiality request does the burden shift to the employer to demonstrate a "legitimate and substantial business justification" for that infringement. [Dec. at 4 (quoting *Jeanette Corp. v. NLRB*, 532 F.2d 916, 918 (3d Cir. 1976)).]

At a minimum, it is the CGC's burden to prove that, on at least one occasion within the Act's 10(b) limitation period, Banner requested confidentiality of a statutory employee in a manner that a reasonable employee would interpret as limiting his or her Section 7 rights. Absent that showing, Banner appropriately did

21

not introduce substantial evidence of reasons justifying any such (non-existent) request or rule. *Louis A. Weiss Mem'l Hosp.*, 172 F.3d at 446 ("[U]ntil General Counsel makes out its case, the Hospital need not prove its affirmative defense.").

This case illustrates the problems that result from litigating hypothetical cases. Here, it is impossible to determine how much a confidentiality request may have involved or impacted Section 7 rights as the CGC's evidence failed to prove that Odell actually requested confidentiality in any particular investigation that implicated Section 7 in any way (*e.g.*, what was the specific complaint under investigation, how did it impact terms and conditions of employment, who was the request made to, what else was said with the request, etc.). Given that the CGC failed to meet its burden to prove that Banner had a rule requiring confidentiality during investigations of conduct that implicated the Section 7 rights of the employee to whom the request was made, or even that Odell ever requested confidentiality in an investigation that actually implicated Section 7 rights at all, the inquiry should end because further evaluation and balancing is merely hypothetical.

### A. The Board arbitrarily assumed a confidentiality request in any workplace investigation automatically impacts Section 7 rights.

In addition to its other shortcomings resulting from unfounded assumptions, the Board's decision also arbitrarily assumed that all workplace investigations presumptively implicate Section 7 rights. But, as the dissent explained, that is far from true. [Dec. at 5 n.16; Dis. at 14.] The Board based its assumption that Odell requested confidentiality of employees accused of misconduct on her testimony that she "might" request confidentiality in the "more sensitive situations," such as when investigating alleged harassment or suspicions of abuse (obviously referring to patient abuse in the hospital setting). Such investigations, however, cannot be presumed to have been situations where statutory employees were accused of the

22

misconduct (rather than supervisors or third parties, such as non-employee doctors), or that employee witnesses' terms of employment were otherwise implicated in any way.

To support its assumption that such investigations automatically implicate Section 7 rights, the Board majority relied upon several of its prior cases. [Dec. at 2-4.] In none of those cases, however, did the Board assume the investigation at issue implicated Section 7 rights. Rather, the Board analyzed the particular employee activities at issue and the allegations in each specific investigation to determine whether the investigation implicated Section 7. *See, e.g.*, *Fresh & Easy Neighborhood Mkt.*, 361 NLRB No. 12, at **5-6 (2014) (finding particular employee's effort to have co-workers sign statement witnessing alleged harassment was concerted activity). The Board never has and cannot now assume that employee witness's Section 7 rights automatically are implicated in every investigation of workplace harassment.

**B.     The Board arbitrarily failed to recognize that, even if Odell had asked  an employee for confidentiality in an investigation that implicated Section 7, her request would have had minimal impact on any employee's Section 7 rights.**

Even if the CGC had established that Odell requested confidentiality of an employee whose Section 7 rights were implicated in the particular investigation, the legality of that request would have to be evaluated based on the minimal impact it would have had on the employee's Section 7 rights. As the dissent thoroughly explained, Odell's testimony demonstrated that any requests for confidentiality would have had only minimal impact on the employee's Section 7 rights because her confidentiality requests: 1) applied only to the investigatory interview *discussion* – not the employee's *underlying complaint*; 2) "might" be made "just" in *sensitive* – not *all* – investigations; 3) applied only *during* the

investigation – not *after* or *outside of* an ongoing investigation; and 4) were unaccompanied by the threat of discipline or reprisal. [Dis. at 10-11.] Although the complaint or concern underlying the investigation might involve a term and condition of employment, Odell's testimony made clear that employees are always free to discuss such complaints and concerns. Indeed, even if an employee is asked to keep the content of the interview discussion confidential during the discussion, the employee is not prohibited from discussing the underlying complaint (or the fact that she was interviewed, which is the only aspect of the investigation process that *might* be considered a term and condition of employment).

Any such limited requests for confidentiality stand in stark contrast to the cases to which the Board majority pointed, all of which involved broadly-worded directives that prohibited employees from discussing core employment terms and conditions. *See, e.g.*, *Hyundai Am. Shipping Agency*, 357 NLRB No. 80, at **1, 27 (rule "routinely" prohibiting employees from discussing "any matters" under investigation); *Westside Cmty. Mental Health Ctr.*, 327 NLRB 661, 666 (1999) (rule prohibiting employees from discussing their *own* discipline); *Franklin Iron & Metal Corp.*, 315 NLRB 819, 820 (1994) (rule prohibiting employees from discussing their *own* wages with coworkers).

Nor is this case similar those where the employer discharged an employee for violating a confidentiality directive without a legitimate business justification. Even under the Board's unfounded definition of Banner's purported policy, for example, any request for confidentiality would have been limited to the time the investigation was ongoing. That limitation alone differentiates this case from the Board cases in which employees were discharged for discussing a matter almost two years *after* the investigation ended, or for discussing the investigation where the only asserted need for confidentiality was to avoid alerting the witnesses but the witnesses already knew about the investigation. [Dis. at 19 (citing *Phoenix*

*Transit Sys.*, 337 NLRB 510, 510 (2002) (discipline for violating confidentiality directive two years after investigation ended unlawful); *Mobil Oil Exploration & Producing*, 325 NLRB 176, 177 (1997) (confidentiality interest in not alerting witnesses slight when harasser already knew about the investigation).]

Yet, the Board held that a request of an employee to keep confidential an investigatory interview into a "sensitive issue" – *limited to the duration of the investigation* – was not a narrowly-tailored restriction on Section 7 rights. In doing so, the Board held that employees would be most interested in engaging in Section 7 rights during such an investigation. But that conclusion is at odds with prior Board cases indicating that confidentiality directives are *more* reasonable when they are limited to the time period of the investigation. *Compare Caesar's Palace, Inc.*, 336 NLRB 271, 272 (2001) (impact on Section 7 rights limited to the period of the investigation lawful), *with SNE Enters.*, 347 NLRB 472, 492-93 (2006) (discharge for breaching confidentiality rule after investigation ended unlawful) *and Phoenix Transit Sys.*, 337 NLRB 510, 510 (2002) (discipline for violating confidentiality directive two years after investigation ended unlawful).

Similarly, the Board inexplicably rejected Odell's uncontroverted testimony that the confidentiality request applied only to the investigation discussion – not the underlying complaint. [Tr. at 259:9-23.] If any, such a request could have only marginal impact on Section 7 rights. Furthermore, the confidentiality prompt – if actually read in any situation (which the CGC never established) – would have limited the confidentiality request to the interview itself, not the underlying complaint or concern. In particular, the first prompt states that this is a "confidential *interview*" and the interviewer will "keep *our discussion* confidential" to the extent possible, and then asks the interviewee "not to discuss

*this*," referring back to the specific *discussion* during the investigatory interview.[3] [CGC Ex. 12 (emphases added).]

In comparison, in concluding that Odell's request would have been interpreted by an employee as a directive not to discuss the matter under investigation, rather than just the investigatory interview, the Board relied upon a strained reading of the Interview Form. In particular, the Board pointed to verbiage in *other* bullet point prompts on the Interview Form referencing the "[m]atter under investigation" as "serious," emphasizing Banner's "commitment/obligation to investigate this claim" and warning that attempts to "influence the investigation" could result in discipline [Dec. at 5], to conclude the word "this" in the bullet point prompt requesting confidentiality would be interpreted as the matter under investigation, not just the investigatory interview. [*Id.*] Apart from the fact that the Board's reading is not grammatically correct, the CGC did not elicit any evidence showing that Odell actually read *any* of those other bullet point prompts to *anyone* at *any* time.[4] Again, the Board inappropriately filled with sheer speculation the gaps left by the CGC's failure to meet its burden of proof.

_____

[3] Indeed, even the CGC read the prompt as limiting the interview discussion, as the Amended Complaint alleges an overly broad rule that prohibited employees from discussing "investigatory *interviews*." [CGC Ex. 13 (emphasis added).] The CGC confirmed this interpretation during his questioning of Odell: "And you gave that employee these instructions to keep the ***conversation*** confidential, correct?" [Tr. 194:13-14 (emphasis added).]

[4] If there were any evidence that Odell had read those other prompts, explaining Banner has an obligation to investigate a serious matter and attempting to influence the investigation can result in discipline does not negate that fact that the context of the confidentiality request prompt itself is clearly intended to reassure the employee being interviewed and directed the confidentiality request at the interview discussion itself, not the matter under investigation.

The Board majority also assumed that, by asking employees to treat their discussion as confidential, Odell was threatening discipline and coercing them from exercising their Section 7 rights. That is not a reasonable conclusion, particularly given the confidentiality prompt is clearly directed at reassuring the interviewee that Odell took their discussion seriously and would treat it confidentially. To support its conclusion, however, the Board focused on another prompt that stated: "Any attempt to influence the outcome of the investigation, any retaliation against anyone who participates, any provision of false information or failure to be forthcoming can be the basis for corrective action up to and including termination." [Dec. at 5; CGC Ex. 14.] Again, the Board uses a strained reading of another prompt in the Interview Form when there is *no* evidence that Odell read that prompt to *anyone* at *any* time.

Even if Odell had read that prompt, its context makes clear that employees are not subject to discipline for choosing not to follow the confidentiality request. Indeed, even the Board admits that the discipline warning is within the context of a prohibition on retaliation and false testimony, noting it could be understood "to apply only to coercive or other improper influence" of the investigation. [Dec. at 5.] However, the Board simply throws aside that contextual reading and assumes employees would believe that prompt restricted their Section 7 rights, an assumption that is not reasonable based on the evidence and prior Board decisions and guidance. *See, e.g.*, *Lutheran Heritage Village-Livonia*, 343 NLRB 646, 646 (2004) (noting that, "[i]n determining whether a challenged rule is unlawful, the Board must . . . give the rule a reasonable reading. It must refrain from reading particular phrases in isolation, and it must not presume improper interference with employee rights"); *cf. Report of the General Counsel Concerning Employer Rules*, GC 15-04 (G.C. Memo March 18, 2015) (explaining that employers can limit the

effect of an otherwise overly-broad rule restricting Section 7 rights by the rule's overall context or by providing context through examples).

By failing to hold the CGC to its burden of proving a confidentiality request in a particular investigation and weighing how much that request might have impacted Section 7 rights, the Board acted arbitrarily in assuming Odell's half-dozen confidentiality requests (made at unknown times to unknown individuals in unknown investigations) were *per se* Act violations and improperly shifted to Banner the burden to justify the confidentiality request in a hypothetical situation. *See Louis A. Weiss Mem'l Hosp.*, 172 F.3d at 445-46 (finding ALJ improperly shifted burden of proof to employer and invoked the "adverse inference" rule against the employer when the CGC had not met its initial burden of proof).

## C. The Board arbitrarily failed to afford any weight to an employer's interest in requesting confidentiality in sensitive investigations involving claims of harassment, hostile work environment and patient abuse.

The Board also acted arbitrarily in failing to assign any weight to the interest of protecting confidentiality in certain sensitive situations. Under well-settled Board law, an employer may lawfully prohibit employees from discussing an investigatory interview while that investigation is ongoing based on "legitimate and substantial business justifications," including the need to "ensure that witnesses [are] not put in danger, that evidence [is] not destroyed, and that testimony [is] not fabricated." *Caesar's Palace, Inc.*, 336 NLRB at 272 (rule requiring confidentiality during ongoing investigation was valid because it was justified by employer's interest in ensuring witness safety, truthful interviews, and maintenance of exhibits); *see also Belle of Sioux City, L.P.*, 333 NLRB 98, 98, 113-14 (2001) (adopting ALJ's dismissal of allegation regarding instructing employees not to discuss a harassment investigation because employer had a

legitimate business reason of ensuring a "proper and uncompromised investigation" without witnesses fabricating testimony or tailoring accounts to bolster or undermine other witnesses' statements).

Banner's desire to preserve confidentiality during sensitive investigations goes beyond a mere business interest. It is motivated by the important policies animating various federal and state laws designed to protect employees and the public. Many of those laws require employers to conduct effective investigations of certain employee claims, such as those alleging harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq. See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998) (under Title VII, employer must exercise reasonable care to prevent and promptly correct harassing behavior). Under Title VII, for example, the Equal Employment Opportunity Commission ("EEOC") warns that employers are "***obligated*** to investigate" claims of workplace harassment and must establish a "complaint process that provides a prompt, thorough, and impartial investigation." EEOC, *Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors*, *available at http://www.eeoc.gov/policy/ docs/ harassment.html* (last visited on January 5, 2016) (emphasis added).

Moreover, to be effective, investigations often necessitate confidentiality. The EEOC has recognized that fact and counsels employers that, when investigating harassment, "information about the allegation of harassment should be shared only with those who need to know about it." *Id.* The Board itself previously has recognized that investigations into sensitive workplace issues may "require" confidentiality to ensure the investigation is effective simply because of the benefit that confidentiality provides in the effort to determine truth:

> The possibility that information will not be kept confidential greatly reduces the chance that the employer will get the whole truth about a workplace event. It also increases the likelihood that employees with information about sensitive subjects will not come forward.

*IBM Corp*., 341 NLRB 1288, 1293 (2004).

Of course, employers are legally obligated to conduct investigations and protect the confidentiality of third party information under a panoply of laws far beyond the strictures of Title VII. For example, federal and state laws require health care providers, such as Banner, to investigate any allegations of possible patient abuse. *See, e.g.,* A.R.S. §§ 13-3620, 46-454 (medical providers required to report "reasonable" belief of patient abuse (which, of course, requires an investigation to determine whether belief is "reasonable")). As the dissent noted in this case:

> In the worst cases—which hopefully will be few in number—the restrictions imposed in this case will not merely undermine important investigations, they will adversely affect efforts to prevent or address workplace violence, to enforce restrictions against discrimination and harassment, to avoid workplace accidents and injuries, and to make important business decisions.

[Dis. at 20.].

This Court recently recognized the legal obligation imposed on employers under various statutory schemes, and that those obligations might justify confidentiality in "particular types of investigations." *Hyundai Am. Shipping Agency, Inc. v. NLRB*, 805 F.3d 309, 314 (D.C. Cir. 2015) (agreeing that antidiscrimination statutes and guidelines requiring confidentiality in harassment and discrimination investigations "may often constitute a legitimate business justification for requiring confidentiality in the context of a particular investigation *or particular types of investigations*," although finding that did not justify "ban[ning] discussions of *all* investigations, includes ones unlikely to present these

30

concerns"(emphases added)). Similarly, confidentiality directives have long been recognized as appropriate under the Act:

> [The] public policy favoring rooting out sexual harassment in the workplace, as well as the corollary policy of clearing falsely-accused supervisors, would seem to warrant a conclusion that care should be exercised when conducting such investigations—to be certain that a proper conclusion is reached. Accordingly, some leeway should be accorded for use of long-recognized fact-finding techniques, such as separation of potential witnesses. Therefore, I conclude that a legitimate purpose did exist for requesting, even instructing, interviewed employees not to discuss the incident giving rise to the complaints being investigated.

*Belle of Sioux City, L.P.*, 333 NLRB at 98, 113-14 (no exceptions filed to the ALJ's recommendation to dismiss the confidentiality allegation).

The ALJ's conclusion in *Belle of Sioux City* recognized that keeping employees from discussing even underlying workplace issues is justified as a fact-finding technique akin to witness sequestration. The ALJ in this case reached the same conclusion. Indeed, the mere possibility that witness testimony might be impacted by hearing other witnesses testify is sufficient to restrict the constitutional right everyone presumptively has to attend government proceedings. *Cf. Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002) (First Amendment gives public presumptive right to access agency adjudications, not merely those in Article III courts). Indeed, as the ALJ noted, that mere possibility is sufficient to support a Board rule that, upon request of any party, provides for an ALJ to restrict the right of any witness to attend the hearing by excluding witnesses from the hearing. And that rule does not require any particular evaluation by the ALJ before an individual's constitutional rights are limited. Yet, a justification sufficient to permit NLRB ALJs to restrict constitutional rights is inadequate, according to the Board, to justify the limited impact Odell's confidentiality

requests might have had on an employee's Section 7 rights. In fact, that justification is entitled to no weight at all according to the Board majority.

Rather than meeting its obligation to "delicate[ly] balance" any alleged impact on employees' Section 7 rights and legitimate business reasons for making a confidentiality request in sensitive investigations, the Board majority did the exact opposite. Even assuming there was evidence that Odell requested confidentiality of an employee in an investigation that implicated Section 7, the Board majority was not free to dismiss out of hand Odell's testimony that she might make a confidentiality request in more sensitive situations. But the Board merely stated that Odell had not provided "*any* legitimate and substantial justification." [Dec. at 4.] As the dissent explains, "failure to attach any value to such requests stands in stark contrast to the record, which provides [Banner's] business justification for the requests." [Dis. at 18.] Indeed, the substantial justifications of protecting the confidentiality of an interview discussion while investigating sensitive claims of harassment, hostile work environment and patient abuse cannot appropriately be assigned a "weight of zero." [Dis. at 18.]

Moreover, the majority's decision failed to consider the Board's own case law that recognized the importance of confidentiality during sensitive investigations. *See, e.g.*, *IBM Corp.*, 341 NLRB at 1293 (recognizing confidentiality can increase "the likelihood that employees with information about sensitive subjects" will report that information). Indeed, the Board's decision would do great damage to employers' ability to conduct effective investigations in such sensitive situations, and, consequently, the employees' rights that those investigations are intended to protect.

Apart from the damage the Board's decision does to employees' rights granted both by the Act and other laws, it puts employers to a Hobson's choice. If employers comply with their obligations to conduct effective investigations as

required by numerous laws, requiring confidentiality may be necessary in a broad range of investigations. But requiring confidentiality would violate the novel rule the Board adopted in this case. On the other hand, employers could comply with Board law under this decision, but forsake their obligations under other equally important laws.

The Board's decision also fails to fulfill its obligations under the Act to consider the important policies of other statutory schemes Congress has created. The Board must do more than pay those interests passing homage; it is required to balance and harmonize them, as the dissent powerfully emphasized. That obligation has been clearly articulated by the Supreme Court:

> It is sufficient for this case to observe that the Board has not been commissioned to effectuate the policies of the Labor Relations Act so single-mindedly that it may wholly ignore other and equally important Congressional objectives. Frequently the entire scope of Congressional purpose calls for careful accommodation of one statutory scheme to another, and it is not too much to demand of an administrative body that it undertake this accommodation without excessive emphasis upon its immediate task.

*S. Steamship Co. v. NLRB*, 316 U.S. 31, 47 (1942) (cited and partially quoted by the dissent [Dis. at 21]).

The Board's decision is fatally flawed in its failure to recognize the importance of confidentiality in sensitive investigations, and especially those where confidentiality serves important purposes enshrined in other congressional statutory schemes, and balance that important interest against the limited hypothetical impact Odell's requests for confidentiality might have had on Section 7 rights.

33

**D.     The Board arbitrarily established an inappropriately broad rule not justified by the facts of the case.**

The Board's decision also articulates a new rule – not advocated by the CGC or justified by the facts of this case – that places overly broad restrictions on employers without meaningful guidance. Specifically, the Board found that a confidentiality request would only be justified based on three requirements: 1) it is "the employer's burden" to justify such a request; 2) the employer must "proceed on a case-by-case basis" and justify the request in each "particular ongoing investigation"; and 3) the justification must involve "objectively reasonable grounds for believing that the integrity of the investigation will be compromised without confidentiality." [Dec. at 3.]

In deciding an employer now must show in every case that "corruption of its investigation would likely occur without confidentiality," the majority claims it is simply following existing Board precedent. [Dec. at 3.] To the contrary, it actually relies on an ALJ's "novel" determination – which the Board did not explicate in affirming it – that this Court recently declined to endorse:

> In enforcing the Board's order, we need not and *do not endorse* the ALJ's novel view that in order to demonstrate a legitimate and substantial justification for confidentiality, an employer must "determine whether in any give [sic] investigation witnesses need protection, evidence is in danger of being destroyed, testimony is in danger of being fabricated, and there is a need to prevent a cover up."

*Hyundai Am. Shipping Agency, Inc.*, 805 F.3d at 314 (emphasis added; internal citation omitted). Nor should the Court endorse that standard here. Given the CGC's failure to present any evidence on the issue the majority now purports to decide, the substantial evidence provides no basis for even addressing the issue – let alone adopting such a narrow view of legitimate business reasons for requesting confidentiality during certain investigations.

34

Furthermore, depending on the facts of a particular investigation, there will be legitimate business concerns that do not meet the Board's test because they do not implicate the integrity of the actual investigation. For example, lack of confidentiality increases "the likelihood that employees with information about sensitive subjects will not come forward," *IBM Corp.*, 341 NLRB at 1293, but that concern does not implicate the "integrity" of the investigation. Confidentiality also helps protect witnesses from retaliation, *Caesar's Palace, Inc.*, 336 NLRB at 272, but that concern may not implicate the investigation's "integrity." The Board provides no explanation for limiting the types of legitimate business reasons for requesting confidentiality to only those involving the integrity of the investigation. Indeed, the Board's rule takes the specific facts of one case (*Caesar's Palace, Inc.*) and inexplicably turns it into the *only* business reasons that can justify confidentiality, despite the fact that a different case may well involve *other* legitimate business reasons for requesting or requiring confidentiality.

As Member Miscimarra recently noted in another dissenting opinion, broadly applying "the NLRA's 'process' restrictions on top of the non-NLRA substantive and procedural requirements implicated in a single employee's individual complaint" would "undermine[] the policies and procedures of *other* important federal, state and local statutes" without justification. *Fresh & Easy*, 361 NLRB No. 12, slip op. at 22 (2014) (Member Miscimarra, dissenting in part). Such an extreme rule finds no basis in logic or the law and, indeed, fails to follow the Supreme Court's guidance to accommodate the statutory goals of other administrative agencies that require confidentiality in certain sensitive investigations. Nor does it provide employers with any objective standards so they "can have 'certainty beforehand' and 'reach decisions without fear of later evaluations labeling . . . conduct an unfair labor practice.'" [Dis. at 21 (quoting *First Nat'l Main. Corp. v. NLRB*, 452 U.S. 666, 678-79, 684-86 (1981)).]

### III.   The Board's Finding That Banner's Confidentiality Agreement Violated The Act Ignored The Substantial Record Evidence, The Correct Legal Standard And The Precedent Of This Court.

#### A.   <u>The Board's decision adopting the ALJ's finding is not supported by substantial evidence and should not be accorded any deference.</u>

In terms of the Confidentiality Agreement allegation, the Board adopted the ALJ's finding that it violated the Act without any substantive discussion or analysis. [Dec. at 1, 7.] Such a finding is entitled to no deference. *See Sutter E. Bay Hosps.*, 687 F.3d at 437 (no deference to Board decision that failed to provide any analysis or explanation). Banner's Agreement provides that:

I understand that I may hear, see and create information that is private and confidential. Examples of confidential information are:

- Patient information both medical and financial.
- Private employee information (such as salaries, disciplinary action, etc.) that is not shared by the employee.
- Business information that belongs to Banner or those with whom we work including:
  - Copyrighted computer programs
  - Business and strategic plans
  - Contract terms, financial cost data and other internal documents.

[CGC Ex. 14; ALJ Dec. at 5-6.] The Agreement goes on to state the six "promises" the employee would make by signing it, which clearly focus on patient information and data on Banner's computers, and provide additional context demonstrating that the Agreement is not intended to impact Section 7 rights.

Banner's Agreement does not define what "confidential information" is. It leaves that to common sense. And, as this Court has made clear, absent an

overbroad definition of "confidential information," reasonable employees understand it means information acquired in confidence. *Cmty. Hosp. of Cent. Cal.*, 335 F.3d at 1089. Moreover, the CGC did not argue, and the Board did not find, that Banner's Agreement violated the Act because of how a reasonable employee might interpret it under the framework of *Lutheran Heritage Village-Livonia*, 343 NLRB at 646-47. Instead, the Board adopted, without comment, the ALJ's finding that the Agreement *per se* violated the Act under *Labinal, Inc.*, 340 NLRB 203 (2003).

In *Labinal*, the Board affirmed, without analysis or discussion, an ALJ's finding the employer had committed a number of unfair labor practices. Among the ALJ's findings was that the employer, Labinal, illegally suspended and discharged the charging party for discussing a co-worker's higher wages and encouraging other employees to engage in concerted activity to address the pay disparity. *Id.* at 211-12. Labinal's witnesses testified at the hearing that it discharged the employee because she had stolen the wage information; the employee testified that she learned of the co-worker's wages innocently. In its post-hearing brief, the employer "changed its tack" (according to the ALJ) to argue – not that it discharged the charging party for stealing the information – but because it had a good-faith *belief* that she had done so. *Id.* at 212.

The ALJ flatly rejected the employer's "good faith" argument based on the substantial evidence, including the clear hostility it had demonstrated towards the employee's Section 7 activity. The ALJ also relied on the statement of a Labinal manager (in an earlier proceeding) that the company's primary focus was not *how* the charging party had acquired her coworker's wage information, but instead, the fact that she *discussed it* with other coworkers. *Id.* at 208-12 ("We really didn't go into how she found out: the fact that she went through private information was enough, but it was more that she had divulged [the coworker's wages].")

37

Among the other violations of the Act, the *Labinal* ALJ found that the employer's confidentiality rule violated the Act because "requiring that one employee get the permission of another employee to discuss the latter's wages, would, as a practical matter, deny the former the use of information innocently obtained, which is the very information he or she needs to discuss the wages with fellow workers before taking the matter to management." *Id.* at 206, 209-10. The ALJ (and consequently the Board) did not base the decision on how a reasonable employee would have interpreted the rule under the framework of *Lutheran Heritage Village-Livonia*. It simply found that the express requirement of co-worker permission illegally restricted Section 7 activities.

This case is fundamentally different, both on its facts and the basis for its legal conclusions. First, there is no evidence that Banner harbored *any* hostility towards employees exercising their Section 7 rights, let alone had Labinal's record of hostility culminating in its illegal discharge of the charging party. Indeed, the only unfair labor practice charges the CGC initially brought to trial – that Banner negatively evaluated Navarro and issued him a "verbal counseling" (based on alleged protected concerted activity unrelated to the Agreement) – were dismissed.

Second, unlike the rule in *Labinal*, which prohibited disclosure of a coworker's wages without that coworker's knowledge and permission, Banner's Agreement protects *only* confidential information (which it does not define in an overbroad manner). Also, Banner's Agreement, on its face, does not restrict Section 7 activity because it does not "require[] an employee ***to get permission from another employee*** to discuss the latter's wages and discipline." [ALJ Dec. at 6 (emphasis added).] Indeed, as the Agreement provides, once an employee discloses his or her own confidential information, any other employee is free to discuss it. As Odell testified without contradiction, after such disclosure, other employees also are free to discuss it, even if they learn of it indirectly, such as by

38

overhearing it. [Tr. at 262:24-263:24.] In other words, as the Agreement provides, once an employee shares his or her confidential personnel information with anyone, it is no longer confidential.

Given that, contrary to the ALJ's conclusion, Banner's Agreement does not require an employee to consent to other employees discussing his or her wages, there is no basis for concluding that it expressly restricts Section 7 activities under *Labinal*. Consequently, the only basis for challenging the Agreement as restricting Section 7 rights would have been under *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004), which would have required the CGC to have shown, and the Board to have found, that a reasonable employee would interpret it as restricting Section 7 rights. But that is not what the CGC argued, nor why the ALJ and Board found the Agreement illegal. And it is too late now for the CGC to ask this Court to affirm the Board's decision on the basis of how it believes a reasonable employee might interpret the Agreement. The sole basis for the Board's decision was that the Agreement expressly restricted Section 7 by requiring one employee to get another's permission before discussing the latter's wages, and that is the only basis on which the Court can review the decision. *Pirlott v. NLRB,* 522 F.3d 423, 433 (D.C. Cir. 2008) ("[A] reviewing court must confine itself to the grounds upon which the record discloses that the agency's action was based." (internal quotation marks and citation omitted)).

Nor could the CGC legitimately have argued that a reasonable employee would interpret Banner's Agreement as a restriction on Section 7 activities. As the Board's General Counsel's recent guidance memo stresses, rules that might be overbroad when read in isolation can be legal if the context of the rule makes clear to a reasonable employee that the employer is not attempting to restrict Section 7 activities. *Report of the General Counsel Concerning Employer Rules*, GC 15-04 (G.C. Memo March 18, 2015). Here, the Agreement's context clearly is limited to

"private or confidential" information that employees learn about, have access to or create as part of their employment with Banner. Furthermore, the fact that Banner is a hospital provides a broader context for the Agreement. The very nature of its business obviously involves sensitive patient information that must be kept confidential. Any reasonable employee coming to work for Banner would understand the need for confidentiality and would not interpret the Agreement as attempting to restrict his or her Section 7 rights. Just like the employer in *Community Hospital*, Banner can fairly assume that employees know confidential information is information acquired in confidence as part of their job duties:

> Confidential information is information that has been communicated or ***acquired in confidence***. A reasonable employee would not believe that a prohibition upon disclosing information, acquired in confidence, 'concerning patients ***or employees***' would prevent him from saying anything about himself or his own employment. ***And to the extent an employee is privy to confidential information about another employee or about a patient, he has no right to disclose that information contrary to the policy of his employer***.

*Cmty. Hosp. of Cent. Cal.*, 335 F.3d at 1089 (emphases added). And as this Court held in that case, no employee has a Section 7 right to disclose or discuss that information learned in confidence in violation of company policy. *Id.*

**B.** **The Board's decision arbitrarily failed to balance Banner's substantial business reasons for its narrowly-tailored Agreement against any interference with Section 7 rights.**

Even assuming the Confidentiality Agreement impacts Section 7 rights, it is justified by Banner's compelling need to protect confidential information that employees acquire in performing their jobs, especially in the hospital setting. Yet, the Board (and the ALJ) failed to balance that justification against any limited effect the Agreement had on Section 7 rights. [*See* Dec. at 6-7.] *See Ang*

40

*Newspapers*, 343 NLRB 564, 565 (2004) (Board must balance the employer's justifications against impact on Section 7 rights).

Banner has a substantial interest in ensuring its employees respect confidential information learned solely through their job duties; in large measure, that interest is the result of legislative mandates. For example, the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 (1996), as amended, imposes substantial penalties when a health care provider inappropriately discloses a patient's protected health information. *See also* A.R.S. § 36-509 (confidentiality requirements for patients' records); A.R.S. § 36-3805 (limiting disclosure of personally identifiable health information). In addition, federal and state employment discrimination laws and state privacy laws encourage, and often require, employers to safeguard their employees' personal information. For example, Title VII prohibits an employer from retaliating against an employee who files a claim of discrimination based on a protected class. 42 U.S.C. § 2000e-3. For that reason, employers are well advised to limit disclosure of such complaints to ensure that the complainant does not suffer retaliation from coworkers who feel the complaint is groundless or future managers who might brand the employee as a "troublemaker."

Moreover, the failure to adequately protect from disclosure information about employee discipline, performance appraisals, social security numbers, bank account numbers and tax information learned in confidence as part of one's job duties can subject an employer to potential liability. *See, e.g.*, A.R.S. §§ 44-1373 through 1373.03 (restrictions on the disclosure of social security numbers and financial information); *Payton v. City of Santa Clara*, 132 Cal. App. 3d 152, 153-54, 183 Cal. Rptr. 17, 17-18 (Cal. App. 1982) (claim for invasion of privacy cognizable when one employee posted another employee's disciplinary action on a bulletin board). When an employee reveals his or her own information, however,

the legal dynamics change and Banner's Agreement does not limit further dissemination of such information.

As noted above, this Court has recognized the legitimate nature of Banner's justification for the Agreement and held that, "to the extent an employee is privy to confidential information about another employee. . . . he has no right to disclose that information contrary to the policy of his employer." *Cmty. Hosp. of Cent. Cal.*, 335 F.3d at 1089. There is no Board case to the contrary.

In adopting the ALJ's decision without comment [Dec. at 1], the Board failed to consider and address the fact that Banner's Agreement is narrowly tailored to its business interests, ensuring the least possible impact on Section 7 rights. The Agreement clearly does not prohibit employees from disclosing and discussing their own terms and conditions of employment, nor does it generally prohibit employees from discussing employment terms amongst themselves or even with third parties. Rather, it restricts disclosure only of confidential information that employees learned solely as a part of their job duties. Indeed, it is even *more* clearly intended to protect only information that is truly confidential than the rule in *Community Hospital*, which applied to "employee information" acquired in confidence *regardless* of whether the employee had also disclosed it. Under *Community Hospital*, Banner's Agreement does not violate the Act.

## IV.    The Board Improperly Ordered A Multi-Facility Posting.

Although the ALJ ordered a remedial posting at Banner Estrella Medical Center, the Board expanded the posting requirement to all facilities where Banner uses the Agreement. [Dec. at 1 n.3.] Such an unusual remedy is not warranted here. This case does not involve the type of hallmark violations, such as discharges, store closures or systematic denials of compensation and benefits, that would warrant a multi-facility posting. *See Torrington Extend-A-Care Employees Ass'n v.*

*NLRB*, 17 F.3d 580, 586 (2d Cir. 1994) (denying enforcement of Board order requiring multi-facility posting, in part because many of employer's unlawful actions were not egregious or "hallmark" violations to justify such a posting).

Furthermore, an employer is not required to post a notice at multiple facilities unless the Board "finds 'considerable similarity in the nature of the unfair labor practices' committed at the different locations." *Earthgrains Co.*, 351 NLRB 733, 740 (2007) (internal citation omitted). Thus, there must have been at least one ULP committed at its location to determine whether it is "similar" to violations at other locations. Here, however, the respondent is Banner Health System d/b/a Banner Estrella Medical Center. [CGC Ex. 1(c).] The CGC did not adduce *any* evidence that Banner uses either the Interview Form or the Agreement at any of its other facilities, nor did the ALJ find any violations at other facilities. The Board cannot shift to Banner the burden the CGC did not carry at the hearing; namely, to establish whether Banner used the Interview Form or Agreement elsewhere.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Banner requests that the Court grant its petition for review and deny the Board's cross-application for enforcement of its order.  In the event the Court decides to enforce all or part of that order, Banner requests that it limit the notice posting to Respondent's facility, Banner Estrella Medical Center.

Dated:  January 14, 2016          Respectfully submitted,


                                   /s/Mark G. Kisicki
                                   Mark G. Kisicki
                                   Elizabeth M. Townsend
                                   Ogletree Deakins Nash Smoak & Stewart P.C.
                                   2415 East Camelback Road, Suite 800
                                   Phoenix, Arizona 85016
                                   Telephone: 602-778-3700
                                   Facsimile: 602-778-3750
                                   mark.kisicki@odnss.com
                                   elizabeth.townsend@odnss.com

                                   Attorneys for Petitioner/Cross-Respondent
                                   Banner Health System d/b/a
                                   Banner Estrella Medical Center

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the Respondent certifies that its final brief contains 12,589 words of proportionally-spaced, 14-point type, and the word processing system used was Microsoft Word 2013.

Dated:  January 14, 2016              /s/Mark G. Kisicki
                                       Mark G. Kisicki
                                       Ogletree Deakins Nash Smoak & Stewart P.C.

                                       Attorneys for Petitioner/Cross-Respondent
                                       Banner Health System d/b/a
                                       Banner Estrella Medical Center

## STATUTORY ADDENDUM

**29 U.S.C. § 158 (a)** [Unfair labor practices by employer] It shall be an unfair labor practice for an employer-- (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 157 of this title.

**29 U.S.C. § 160(f)** [Review of final order of Board on petition to court] Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of title 28, United States Code [section 2112 of title 28]. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive. Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by

filing in such court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of title 28, United States Code [section 2112 of title 28]. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing *Brief of Petitioner/Cross-Respondent Banner Health System d/b/a Banner Estrella Medical Center* was electronically filed on this 14th day of January, 2016 and was served through the Court's e-filing system on the following counsel of record:

Linda Dreeben
Usha Dheenan
Joel Heller
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
Attorneys for Respondent/Cross-Petitioner

_____

23534072.1

48